UNITED STATES of America ex rel.
John HICKEY, Appellant,

v.

Glen R. JEFFES, Superintendent, State
Correctional Institution, Dallas, Penn-
sylvania District Attorney of Bucks
County, Pennsylvania.

No. 76–2604.

United States Court of Appeals,
Third Circuit.

Submitted under Third Circuit
Rule 12(6) Dec. 2, 1977.

Decided Feb. 13, 1978.

Kenneth G. Biehn, Dist. Atty., Stephen B. Harris, First Asst. Dist. Atty., Doylestown, Pa., for appellee.

Joseph D. Paparelli, Gazda and Gazda, Scranton, Pa., for appellant.

Before GIBBONS, VAN DUSEN, Circuit Judges, and GERRY,* District Judge.

## OPINION OF THE COURT

GIBBONS, Circuit Judge.

John Hickey, a prisoner of the Commonwealth of Pennsylvania, appeals from an order denying his petition for habeas corpus relief on the ground that he failed to exhaust remedies available under the Pennsylvania Post Conviction Hearing Act. 19 P.S. § 1180–1 *et seq.* Since each of the issues which Hickey tendered on the habeas corpus petition was presented to and considered by the Pennsylvania courts on his direct appeal, we hold that the district court erred in dismissing the petition on exhaustion grounds. Since one of his claims for habeas corpus relief ·is meritorious, we reverse the denial of the petition.

## I. THE EXHAUSTION RULING

Hickey was convicted by a Pennsylvania Common Pleas Court jury of robbery, theft, involuntary deviate sexual intercourse, carrying a firearm without a license, and the commission of a crime of violence while armed with a firearm. He was given a general sentence of five to ten years. In post-trial motions and in his appeals to the Superior Court and the Supreme Court of Pennsylvania, he contended (1) that the trial court improperly admitted in evidence a jacket, trousers, and belt seized at his home during the course of a warrant search since these items were not described in the warrant; (2) that the trial court committed error of due process dimensions when it admitted testimony of the victim concerning a flirtatious conversation between herself and Hickey several months before the offense; and (3) that in violation of the holding in *In re Winship*, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970), the Commonwealth was relieved of the burden of proving an essential element of the offense of carrying a weapon without a license. Following the denial of his appeals to the Superior and Supreme Courts of Pennsylvania, Hickey filed a federal habeas corpus petition on March 2, 1976, listing the same contentions. In the standard-form petition for habeas corpus in use in the Middle District of Pennsylvania he alleged in paragraphs 15 and 16 that all these grounds had previously been presented. The district court directed the Commonwealth to file an answer, and that answer admitted the allegations in paragraphs 15 and 16. Nevertheless, on June 16, 1976, the district court filed an order dismissing the petition for habeas corpus because Hickey had filed no petitions under the Pennsylvania Post Conviction Hearing Act and thus had not exhausted available state remedies. When Hickey attempted to appeal *in forma pauperis* the court certified that the appeal was taken in bad faith and declined to issue a

---

* Honorable John F. Gerry, United States District Judge for the District of New Jersey, sitting by designation.

certificate of probable cause. In these rulings the exhaustion ground was reiterated. On December 10, 1976, a panel of this court granted leave to proceed *in forma pauperis* and issued a certificate of probable cause. The Commonwealth does not defend the district court's exhaustion ruling on this appeal. Since the issues tendered in the habeas corpus proceeding were raised at trial and on direct appeal, state remedies have been exhausted. *United States ex rel. Geisler v. Walters,* 510 F.2d 887, 892 (3d Cir. 1975); *United States ex rel. Schultz v. Brierly,* 449 F.2d 1286 (3d Cir. 1971). The merits of the habeas corpus petition must be considered.

## II. THE *WINSHIP* CONTENTION

■ Pennsylvania's version of the Uniform Firearms Act, now found at 18 C.P. S.A. § 6106(a), provides:

No person shall carry a firearm in any vehicle or concealed on or about his person, except in his place of abode or fixed place of business, without a license therefor as provided in this subchapter.

In a series of Superior Court cases prior to 1970, Pennsylvania held that in a prosecution for violation of the statute the Commonwealth need not affirmatively prove the absence of a license. *See, e. g., Commonwealth v. Anderson,* 191 Pa.Super. 213, 156 A.2d 624 (1959). In *In re Winship, supra,* however, the Supreme Court held that "the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." 397 U.S. at 364, 90 S.Ct. at 1073. Hickey's trial took place after the decision in *Winship,* but before the decision in *Commonwealth v. McNeil,* 461 Pa. 709, 337 A.2d 840 (1975). In *McNeil,* the Supreme Court of Pennsylvania held that because the absence of a license was an essential element of the crime, *Winship* required that the prosecution prove that element beyond a reasonable doubt. Thereafter several Pennsylvania cases held that *McNeil* would be given only prospective application. *See Commonwealth v. Ya-*

*ple,* 238 Pa.Super. 336, 357 A.2d 617 (1976); *Commonwealth v. Williams,* 237 Pa.Super. 91, 346 A.2d 308 (1975). The Commonwealth urges that the Pennsylvania appellate courts properly rejected Hickey's challenge to the unlicensed possession of firearms conviction because his trial took place before *McNeil,* which is prospective only.

With deference, we observe that the Commonwealth, and the Commonwealth appellate courts, asked the wrong question. The question is not the retroactivity of *McNeil,* but the prospectivity of *Winship.* Certainly, as the *McNeil* opinion holds, there was never any doubt that the absence of a license was a material element of the offense. The issue tendered by Hickey is the effect of a complete absence of proof on that issue. Since he was tried after *Winship,* he must be given the benefit of the *Winship* holding that due process prevents his conviction absent such proof.

■ The Commonwealth also urges that because Hickey received a general sentence of imprisonment on several counts, including the unlicensed possession of firearms count, we should disregard the constitutional error which affects that count. Pennsylvania has never accepted the so-called concurrent sentence doctrine. *See Commonwealth v. Wolfe,* 220 Pa.Super. 415, 289 A.2d 153 (1972). But under Pennsylvania law a general sentence will be upheld if there is any valid count sustaining it, despite the invalidity of one or more of the other underlying counts, so long as the sentence is, as here, within the prescribed statutory maximum for the valid conviction. Thus it may be that even if the unlicensed possession conviction is invalid, the Pennsylvania courts would not disturb the sentence. But it does not follow that habeas corpus relief is unavailable. Certainly we must presume, as did the Court in *Benton v. Maryland,* 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed. 707 (1969), *Sibron v. New York,* 392 U.S. 40, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968), and *Pollard v. United States,* 352 U.S. 354, 77 S.Ct. 481, 1 L.Ed.2d 393 (1957), that there are present and future collateral consequences, in addition to present custody,

flowing from the invalid conviction. And while some form of custody may be deemed to be jurisdictional for federal habeas corpus, "the statute does not deny the federal courts power to fashion appropriate relief other than immediate release." *Peyton v. Rowe,* 391 U.S. 54, 66, 88 S.Ct. 1549, 1556, 20 L.Ed.2d 426 (1968). As early as *Ex parte Hull,* 312 U.S. 546, 61 S.Ct. 640, 85 L.Ed. 1034 (1941), the Court held that a conviction could be challenged in a habeas corpus proceeding even though petitioner would not be released if he prevailed. 28 U.S.C. § 2244(b) provides for "release from custody or other remedy." *See Carafas v. LaVallee,* 391 U.S. 234, 239, 88 S.Ct. 1556, 20 L.Ed.2d 554 (1968); *Walker v. Wainwright,* 390 U.S. 335, 336, 88 S.Ct. 962, 19 L.Ed. 1215 (1968); *Jones v. Cunningham,* 371 U.S. 236, 243, 83 S.Ct. 273, 9 L.Ed.2d 285 (1963). The district court has the statutory authority to relieve Hickey from the collateral consequences, whatever they may be, of an unconstitutional conviction even though it would not disturb the general sentence which is sustainable on other counts.

## III. HICKEY'S OTHER CHALLENGES

█ Hickey, of course, urges that the entire conviction should be set aside because the two other errors on which he relies, the allegedly invalid search and the allegedly improper admission of testimony by the victim, affected all counts. Before addressing these contentions, we must decide whether they are properly before us.

28 U.S.C. § 2253 provides in part:

An appeal may not be taken to the court of appeals from the final order in a habeas corpus proceeding where the detention complained of arises out of process issued by a State court, unless the justice or judge who rendered the order or a circuit justice or judge issues a certificate of probable cause.

In Hickey's case an application was presented to a panel of this court, which granted it "as to the limited issue of the burden of proof in the firearm conviction." Thus we must determine whether we have before us an appeal from the order denying habeas corpus relief, or an appeal from a limited legal issue defined in the certificate. Ordinarily appeals lie from judgments, not from opinions on, or statements of, legal issues.

The quoted language from § 2253 originated in the Act of March 10, 1908, ch. 76, 35 Stat. 40, in which it applied to appeals to the Supreme Court. The House Report which accompanied the bill disclosed that its purpose was "to correct a very vicious practice in delaying the execution of criminals by groundless habeas corpus proceedings and appeals therein taken just before the day set for execution." H.R. Rep. No. 23, 60th Cong., 1st Sess. (1908). The report noted that enactment of the bill would "make it impossible to continue this vicious practice, as under it no appeal can be prosecuted unless either the United States Court making the final decision or a justice of the Supreme Court should be of the opinion that there exists probable cause for an appeal." *Id.* at 2. There is nothing in the text of the statute as enacted or in its legislative history suggesting that it was addressed to any issue other than delay of execution of sentences, particularly capital sentences. There is no suggestion that it was intended to confer upon a single judge or justice the power to control what issues could be considered by the Supreme Court in support of or in opposition to a judgment denying habeas corpus relief. When § 6A of the Judiciary Act of 1925, ch. 229, conferred habeas corpus appellate jurisdiction on the Circuit Courts of Appeals, the provisions of the 1908 act became applicable to those courts. There is no suggestion that it was to operate in those courts differently than in the Supreme Court.

Section 2253 must be contrasted with 28 U.S.C. § 2254(b) & (c), the exhaustion requirement, which has been construed as a limitation on the issues a habeas corpus court may consider, either originally or on appeal. That requirement was first codified in 1948. Act of June 25, 1948, ch. 646. The two sections serve different purposes, and it is only the exhaustion provision which limits the authority of either the district court or the court of appeals to consider specific issues.

Moreover it would, we think, be highly undesirable to construe § 2253 as a grant of authority to a single district judge, a single circuit judge, or even a panel of the court of appeals to prescribe the issues which another panel may consider in support of, or in opposition to, a judgment. It might be, for example, that the application of a settled principle of constitutional law would justify the reversal of a denial of habeas corpus relief, but the pro se applicant in applying for a certificate of probable cause did not articulate the settled ground with sufficient clarity. If a limited certificate could preclude consideration of the settled ground, it could force a panel of necessity to decide a novel or unsettled issue of constitutional law unnecessary to its decision.

Finally, as a practical matter it is difficult to imagine how any limited certificate practice could operate. We have held that the filing of the notice of appeal within thirty days of the judgment is the critical event and that the grant of a certificate of probable cause can take place thereafter. *See* Fed.R.App.P. 22(b); *Fitzsimmons v. Yeager,* 391 F.2d 849 (3d Cir.), *cert. denied,* 393 U.S. 868, 89 S.Ct. 154, 21 L.Ed.2d 137 (1968). Since a single circuit judge may issue a certificate of probable cause, any member of the panel to whom the appeal is referred would appear to have power to issue an unlimited certificate any time after a notice of appeal is filed. We conclude, therefore, that the limitation of issues which appears in the certificate of probable cause filed on December 10, 1976, was ineffective. What is before us is an appeal from a judgment dismissing a habeas corpus petition. We can consider any issue,

previously considered by the Pennsylvania courts, which was presented to the district court and would be ground for a reversal, or any issue which would be ground for an affirmance.[1]

■ Turning, then, to the merits of Hickey's fourth amendment claim, we note that the Commonwealth afforded an opportunity for a pretrial suppression motion, that the Superior Court considered the issue on appeal, and that the Supreme Court denied allocatur.[2] *Stone v. Powell,* 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976), is an insurmountable obstacle to habeas corpus relief, since the Pennsylvania courts have afforded a full and fair opportunity to litigate the question of the fourth amendment violation. Their decision, even if erroneous, is now beyond Article III review.

■ As to the contention that the trial court erred in admitting the victim's testimony of a prior flirtatious conversation, we find that, if there was any error in the court's ruling on a discretionary matter, that error was at best one of interpretation of the state's law of evidence and did not arise to constitutional dimensions.

## IV. CONCLUSION

The judgment dismissing the petition for habeas corpus is reversed and the case remanded to the district court for the entry of an order directing the Commonwealth to vacate petitioner Hickey's conviction under 18 C.P.S.A. § 6106(a) and to afford him a new trial on that count or, within a time to be fixed by the district court, to dismiss the indictment.

1. We have found two cases in which the First Circuit Court of Appeals makes passing reference to limited certificates of probable cause. *Nelson v. Moore,* 470 F.2d 1192, 1194 n. 1 (1st Cir. 1972), *cert. denied,* 412 U.S. 951, 93 S.Ct. 3017, 37 L.Ed.2d 1003 (1973); *Haller v. Robbins,* 409 F.2d 857 (1st Cir. 1969). In neither is there any discussion of the practice, and in neither was the result of the appeal affected. One Ninth Circuit case, *Choate v. Wilson,* 363 F.2d 543, 545 (9th Cir. 1966), refers to a limited certificate issued by a district judge, but without discussion decides the case on another ground. In *United States ex rel. Sadowy v. Fay,* 284 F.2d 426, 427 (2d Cir. 1960), a limited district court certificate refers to the only ground presented in the habeas corpus petition. We have found no case even discussing, much less sustaining, the power of a judge issuing a certificate of probable cause to limit the grounds of appeal which a panel may consider.

2. Hickey also presented the issue in a Pennsylvania post-conviction relief application in which relief was denied because it had been conclusively litigated on direct appeal.